UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

*JUL 0 8 2008*

*Judge Blanche M. Manning*
*United States District Court*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 780 |
| vs. | ) | Judge BLANCHE M. MANNING |
| | ) | |
| THELMA LUSTANIA | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant THELMA LUSTANIA, and her attorney, HELEN KIM, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with mail fraud, in violation of Title 18, United States Code, § 1341 (Counts One through Five).

3.     Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4.     Defendant fully understands the nature and elements of the crimes with which she has been charged.

### Charge to Which Defendant is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the indictment. Count One charges the defendant with mail fraud, in violation of Title 18, United States Code, § 1341.

**Factual Basis**

6.      Defendant will plead guilty because she is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

From in or about March 2000 and continuing until in or about June 2003, defendant devised, intended to devise and participated in a scheme to defraud and obtain and retain money and property by means of materially false and fraudulent pretenses, representations and promises.

Specifically, in early 2000, defendant was a registered nurse working in hospitals and nursing homes in DuPage County, Illinois. Defendant began telling her friends and co-workers that defendant was making money by investing in the stock market and trading on-line. She encouraged her friends to give her money to invest, guaranteeing them monthly returns of 5-15%. Defendant also promised that she would return the investors' principal in six months or one year. After receiving initial investments from her friends, defendant made monthly interest payments and asked the investors to invest more money. Defendant also encouraged her investors to recruit other investors. In order to encourage individuals who invested with defendant directly ("Direct Investors") to recruit other investors ("Referral Investors"), defendant guaranteed the Direct Investors a total of 10% (if they were receiving 5%) monthly interest on funds provided by Referral Investors with half of the interest payment to be retained by the Direct Investor as compensation for recruiting the Referral

2

Investor. The Direct Investor was to guarantee the Referral Investor the remaining 5%

interest per month. Defendant agreed to pay at least one Direct Investor 15-20% on funds

provided by Referral Investors. From in or about March 2000 until at least in or about June

2003, based upon defendant's representations that she would pay 5-15% monthly interest and

the fact that she had paid interest to many investors, more than 70 individuals gave defendant

approximately $1,381,616 to invest. Approximately 17 individuals personally gave

approximately $272,966 to defendant for defendant to invest on their behalf. By

guaranteeing 5% interest, Victim CG, a direct investor, recruited approximately 35

individuals who gave Victim CG approximately $654,900 for defendant to invest. By

guaranteeing 5% interest, Victim GA, a referral investor, recruited approximately 11

individuals who gave Victim GA approximately $173,750 for defendant to invest. By

guaranteeing 5% interest, Victim ZF, a direct investor, recruited approximately six

individuals who gave Victim ZF approximately $280,000 for defendant to invest. The Direct

Investors obtained funds from the Referral Investors and then gave those funds to defendant

to invest. Although defendant repeatedly represented to the Direct Investors that she was

investing in the stock market, on-line and in real estate, she in fact invested only a small

amount, $66,000, of the funds she received from the investors. Further, defendant received

no return on the minimal investments she made. Nevertheless, defendant purported to pay

interest to the investors based on non-existent investments. In fact, defendant used money

she received for investment to make interest payments to the investors. From the end of 2000

3

until approximately February 2003, the Direct Investors would meet defendant either monthly or bi-monthly in person, either at their jobs or at defendant's home and receive their interest payments. On some occasions, defendant would tell the Direct Investor that the Direct Investor could keep part of the new investment to pay toward interest which defendant owed on prior investments. Of the approximately $1,381,616 million which defendant collected from the investors, she returned approximately $618,000 in purported interest payments. Defendant used the remainder of the money for her own personal benefit. Defendant admits that she owes the investors approximately $773,597.

As part of the scheme, on or about December 5, 2002, defendant knowingly caused to be delivered by the United States Postal Service, an envelope containing four Bank of America Cashier's checks dated December 5, 2002, made payable to defendant from a referral investor, three checks in the amount of $5,000 and one in the amount of $4,000, which envelope was addressed to Victim ZF in Downers Grove, Illinois. Victim ZF gave the four checks to defendant, who deposited the checks into defendant's personal bank account.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000 or twice the gross gain or gross loss resulting from the

4

offense, which ever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

      b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

5

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in Count One of the indictment is 7, pursuant to Guideline §2B1.1(a)(1);

ii.    Defendant receives a 14 level increase pursuant to §2B1.1(b)(1)(H) because the loss amount, approximately $773,597, is more than $400,000 but less than $1 million.

iii.    Defendant receives a 2 level increase pursuant to §2B1.1(b)(2)(A) because the scheme involved more than 10 victims.

iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level

6

reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.      **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

        d.      **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 20, which, when combined with the anticipated criminal history category of I,  results in an anticipated advisory Sentencing Guidelines range of 33 to 41 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

        e.      Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement.  Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation.   Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs (b) i - iii, of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

g.      Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.     The government agrees to recommend that sentence be imposed at the high end of the applicable guidelines range.

8

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

12.     Regarding restitution, the parties acknowledge that the total amount of restitution owed to the victims set forth in Attachment A, in the amounts set forth in Attachment A, is approximately $773,597 minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

9

## Presentence Investigation Report/Post-Sentence Supervision

15.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17.    For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed

subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 780.

19.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

20.    Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant.

11

## Waiver of Rights

21.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.     **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to

consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

    vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

    b.    **Appellate rights.** Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant

13

understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

      c.    Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

### Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

23.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24.    Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require

defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25.    Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27.    Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____7/8/08_____

PATRICK J. FITZGERALD
United States Attorney

THELMA LUSTANIA
Defendant

LELA D. JOHNSON
Assistant U.S. Attorney

HELEN KIM
Attorney for Defendant

16

THELMA LUSTANIA, 07 CR 780
## ATTACHMENT A

| | Investors | $ Invested | $ Returned | $ Owed |
|---|---|---|---|---|
| 1 | Victim RD | $120,000.00 | $47,000.00 | $73,000.00 |
| 2 | Victim CH | $60,000.00 | $9,000.00 | $51,000.00 |
| 3 | Victim FM | $30,000.00 | $4,500.00 | $25,500.00 |
| 4 | Victim ER | $50,000.00 | $11,250.00 | $38,750.00 |
| 5 | Victim CA | $2,000.00 | $100.00 | $1,900.00 |
| 6 | Victim RD2 | $27,000.00 | $7,350.00 | $19,650.00 |
| 7 | Victim GA | $97,750.00 | $24,950.00 | $72,800.00 |
| 8 | Victim CA2 | $2,000.00 | $0.00 | $2,000.00 |
| 9 | Victim JA | $16,700.00 | $2,384.00 | $14,316.00 |
| 10 | Victim FB | $43,000.00 | $3,781.50 | $39,218.50 |
| 11 | Victim MD | $7,500.00 | $2,530.00 | $4,970.00 |
| 12 | Victim KG | $5,000.00 | $800.00 | $4,200.00 |
| 13 | Victim SI | $30,738.65 | $20,702.23 | $10,036.42 |
| 14 | Victim JI | $15,000.00 | $5,200.00 | $9,800.00 |
| 15 | Victim JJ | $1,000.00 | $0.00 | $1,000.00 |
| 16 | Victim CL | $9,484.00 | $4,881.00 | $4,603.00 |
| 17 | Victim LN | $6,000.00 | $3,801.50 | $2,198.50 |
| 18 | Victim CO | $1,000.00 | $0.00 | $1,000.00 |
| 19 | Victim JR | $4,000.00 | $0.00 | $4,000.00 |
| 20 | Victim NG | $100,000.00 | $9,600.12 | $90,399.88 |
| 21 | Victim CA3 | $20,000.00 | $0.00 | $20,000.00 |
| 22 | Victim JA | $2,000.00 | $0.00 | $2,000.00 |
| 23 | Victim OA | $34,000.00 | $16,200.00 | $17,800.00 |
| 24 | Victim CB | $77,000.00 | $50,100.00 | $26,900.00 |
| 25 | Victim FD | $2,000.00 | $600.00 | $1,400.00 |
| 26 | Victim E | $10,000.00 | $5,500.00 | $4,500.00 |
| 27 | Victim CG | $50,000.00 | $0.00 | $50,000.00 |
| 28 | Victim GF | $4,400.00 | $2,200.00 | $2,200.00 |
| 29 | Victim FG | $3,000.00 | $2,100.00 | $900.00 |
| 30 | Victim LG | $11,000.00 | $1,300.00 | $9,700.00 |
| 31 | Victim LL | $26,500.00 | $11,500.00 | $15,000.00 |
| 32 | Victim AL | $8,000.00 | $2,400.00 | $5,600.00 |
| 33 | Victim JL | $8,000.00 | $900.00 | $7,100.00 |
| 34 | Victim ML | $8,000.00 | $2,200.00 | $5,800.00 |
| 35 | Victim EL | $84,000.00 | $64,900.00 | $19,100.00 |
| 36 | Victim HM | $50,000.00 | $19,500.00 | $30,500.00 |
| 37 | Victim RN | $30,000.00 | $18,020.00 | $11,980.00 |
| 38 | Victim DN | $13,000.00 | $12,100.00 | $900.00 |
| 39 | Victim MN | $8,000.00 | $5,600.00 | $2,400.00 |
| 40 | Victim LP | $30,000.00 | $10,500.00 | $19,500.00 |
| 41 | Victim YR | $10,000.00 | $1,200.00 | $8,800.00 |
| 42 | Victim OR2 | $8,000.00 | $4,400.00 | $3,600.00 |
| 43 | Victim ZR | $28,000.00 | $12,000.00 | $16,000.00 |
| 44 | Victim AS | $8,000.00 | $1,500.00 | $6,500.00 |
| 45 | Victim ZR | $3,000.00 | $0.00 | $3,000.00 |
| 46 | Victim AS | $3,000.00 | $1,800.00 | $1,200.00 |
| 47 | Victim CS | $3,000.00 | $1,125.00 | $1,875.00 |
| 48 | Victim MR | $15,000.00 | $6,000.00 | $9,000.00 |
| | | | | |
| | Total Restitution Owed | $1,185,072.65 | $411,475.35 | $773,597.30 |